Michael P. West, Esq. (SBN 172478)
Ashley A. Escudero, Esq. (SBN 250473)
**CLARK HILL LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:  (213) 891 9100
Facsimile:   (213) 488-1178
mwest@clarkhill.com
aescudero@clarkhill.com

Attorneys for Defendant,
DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER (also sued and served as "Brookfield Healthcare Center")

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| CARMEN PADILLA, LETICIA PADILLA, JOSE PADILLA, JESUS PADILLA, ISMAEL PADILLA, and ALFREDO PADILLA, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>BROOKFIELD HEALTHCARE CENTER, an unknown business entity; DOWNEY COMMUNITY CARE, LLC, A Nevada Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:21-cv-02062 DMG (ASx)<br><br>**DEFENDANT DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, FOR 12(i) HEARING**<br><br>**Date:** **April 16, 2021**<br>**Time:** **9:30 a.m.**<br>**Courtroom:** **8C** |

1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ..................................................................................... 9

II.  FACTUAL BACKGROUND ................................................................. 12

III.  ARGUMENT AND AUTHORITIES ...................................................... 16

    A.  LEGAL STANDARD FOR MOTION TO DISMISS....................... 16

        i.  Rule 12(b)(6) – Failure to State a Claim ....................... 16

        ii.  Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction ................................................................. 17

    B.  DOWNEY COMMUNITY CARE IS IMMUNE FROM SUIT UNDER THE PREP ACT ........................................................ 17

        1.  Downey Community Care Is A "Covered Person" Under the PREP Act. ...................................................... 21

            i.  Downey Community Care is a "Program Planner" under the PREP Act ..................................... 21

            ii.  Downey Community Care is a "Qualified Person" under the PREP Act ........................................ 23

        2.  Plaintiffs' Allegations Involve "Covered Countermeasures" ...................................................... 24

        3.  Downey Community Care engaged in "Recommended Activities" ...................................... 27

        4.  Plaintiffs Failed to Exhaust Administrative Remedies. .................................................................. 28

        5.  Plaintiffs' Exceptions to Immunity Must Be Filed Elsewhere. ................................................................. 29

        6.  Plaintiffs Fail to Comply with the Special Pleadings Standards. .......................................................... 30

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

7.  Alternatively, the Complaint Should be Dismissed Without Prejudice or Stayed. ..................................................... 30

C.  THIS COURT LACKS SUBJECT MATTER JURISDICTION ............................................................................ 31

D.  DOWNEY COMMUNITY CARE REQUESTS A HEARING UNDER F.R.C.P. 12(i) ..................................................... 31

IV.  CONCLUSION .......................................................................... 32

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Page(s)</u>

4

<u>CASES</u>

5

6
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................15, 16, 30

7
*CMAX, Inc. v. Hall*,
8
300 F.2d 265 (9th Cir. 1962) ...................................................................30

9
*Daniels-Hall v. National Educ. Ass'n*,
629 F.2d 992 (9th Cir. 2010) ...........................................................15, 16
10

11
*Dixon v. City of Long Beach*,
*244 Fed.Appx. at 128 n. 1 (9th Cir. 2007).)* ..........................................31
12

13
*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006) .....................................................................19
14

15
*Garcia v. Welltower OpCo Grp. LLC*,
2021 WL 492581 (C.D. Cal. Feb. 10, 2021) ......................................19, 20
16

17
*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .....................................................9
18

19
*Hatcher v. HCP Prairie Village KS OPCO LLC*,
20-cv-02374-SAC-JPO (D. Kan. Jan. 27, 2021) ......................................20
20

21
*Hunter v. Bryant*,
502 U.S. 224 (1991)...................................................................................11

22
*In re Amgen Inc. Sec. Litig.*,
23
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ....................................................16

24
*JKC3H8 v. Colton*, 221 Cal. App. 4th 468 (Cal. App. 2013)...................15

25
*Leyva v. Certified Grocers of Cal., Ltd.*,
26
593 F.2d 857 (9th Cir. 1979) ...................................................................30

27
*Moore v. Avery*,
28
125 F. App'x 763 (9th Cir. 2005)...............................................................16

4

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

*Ni v. Royal Bus. Bank of Los Angeles*,
607 F. App'x 720 (9th Cir. 2015) ................................................................ 16

*Orsonio v. Armond*,
No. B174092, 2005 Cal. App. Unpub. LEXIS 6054, at *24–25 (July 13, 2005) .......................................................................................................... 11

*Parker v. St. Lawrence County Pub. Health Dept.*,
954 N.Y.S.2d 259 (NY App. Div. 2012) ..................................................... 17

*Physicians Com. For Responsible Medicine v. Tyson Foods, Inc.* (2004)
119 Cal. App. 4th 120 ................................................................................. 11

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) .............................. 19

*Rivas v. Coverall N. Am., Inc.*,
No. SACV181007JGBKKX, 2019 WL 7166972, at *3 (C.D. Cal. Feb. 28, 2019) ....................................................................................................... 29

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ............................................................... 16, 17

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .................................................................... 16

*Saucier n. Katz*, (2001) 533 U.S. 194 ....................................................... 17

*Serrano v. Francis*,
345 F.3d 1071 (9th Cir. 2003) .................................................................... 16

*Simmons v. Galvin*,
575 F.3d 24 (1st Cir. 2009) ......................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................... 16

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .............................. 9

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .................................................................... 17

**STATUTES**

42 U.S.C. § 247d–6d(a)(1)&(b) ................................................................... 18

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

42 U.S.C. § 247d-6d(a)(2)(A) ................................................................18

42 U.S.C. § 247d-6d(a)(2)(B) ................................................................18

42 U.S.C. § 247d-6d(b)(1) .....................................................................18

42 U.S.C. § 247d-6d(c)(1) .....................................................................28

42 U.S.C. § 247d-6d(c)(3) .....................................................................28

42 U.S.C. § 247d-6d(d)(1) .....................................................................28

42 U.S.C. § 247d-6d(e)(1),(5) ..........................................................29, 31

42 U.S.C. § 247d-6d(e)(3) .....................................................................29

42 U.S.C. § 247d-6e(d)(1) .....................................................................28

42 U.S.C. § 247d-6e(d)(4) .....................................................................28

42 U.S.C. 247d-6d ................................................................................22

42 U.S.C.A. § 247d-6d(a)(1)(6) ............................................................24

42 U.S.C.A. § 247d-6d(a)(3) .................................................................27

42 U.S.C.A. § 247d-6d(b)(2)(E) ...........................................................25

42 U.S.C.A. § 247d-6d(b)(8) .................................................................29

42 U.S.C.A. § 247d-6d(e)(1),(5) ...........................................................30

42 U.S.C.A. § 247d-6d(i)(1) .............................................................24, 26

42 U.S.C.A. § 247d-6d(i)(1),(8) ............................................................24

42 U.S.C.A. § 247d-6d(i)(2)(B) .............................................................20

42 U.S.C.A. § 247d-6d(i)(2)(B)(v) ........................................................23

42 U.S.C.A. § 247d-6d(i)(6) ..................................................................21

42 U.S.C.A. § 247d-6d(i)(8) ..................................................................23

42 U.S.C.A. § 247d-6e(a) ......................................................................28

42 U.S.C.A. §§ 247d-6d(c)(4) ....................................................29, 30, 31

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

42 U.S.C.A. §§ 247d-6d, 247d-6e ................................................................10, 20

85 Fed. Reg. 15198 ..........................................................................................17

85 Fed. Reg. 15198-15201 ...............................................................................18

85 Fed. Reg. 15200 ..........................................................................................27

85 Fed. Reg. 15201 ..........................................................................................26

85 Fed. Reg. 21012-02 .....................................................................................18

85 Fed. Reg. 21014 Sec. VI (Apr. 15, 2020) ..................................................24

85 Fed. Reg. 35101 ..........................................................................................18

85 Fed. Reg. 79195 ..........................................................................................11

85 Fed. Reg. at 15202 .........................................................................21, 24, 26

## OTHER AUTHORITIES

Determination that a Public Health Emergency Exists, https://www.
phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx ...................13

Executive Order N-27-20 dated March 15, 2020:
https://www.gov.ca.gov/wp-content/uploads/2020/03/3.15.2020-
COVID-19-Facilities.pdf ..................................................................................13

https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (as of
December 2, 2020)..............................................................................................10

Letter from President Donald J. Trump on Emergency Determination
Under the Stafford Act, https://www.whitehouse.gov/briefings-
statements/letter-president-donald-j-trump-emergencydetermination-
stafford-act/ .....................................................................................................13

P. Binzer, *The PREP Act: Liability Protection for Medical
Countermeasure Development, Distribution, and Administration,
Biosecurity and Bioterrorism: Biodefense Strategy, Practice, and
Science*, Vol. 6, No 4, 2008 ..............................................................................17

Proclamation of a State of Emergency (Mar. 4, 2020) https://www.
gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-
to-help-state-prepare-for-broader-spread-of-covid-19/ ..........................................13

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

Pub. Law. No. 115-127, Sec. 6005 .........................................................25

U.S. Food & Drug Administration, Emergency Use Authorization (last visited May 7, 2020), https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#covid19euas...................................................................25

U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download ......................................25

U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download; U.S. Food & Drug Administration, FDA Combating COVID-19 With Therapeutics (May 4, 2020) https://www.fda.gov/media/136832/download ...............................25

WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-mediabriefing-on-covid-19---11-march-2020 ...............................13

WRIGHT & MILLER, 5C FED. PRAC. & PROC. CIV. § 1373, Notes 11-15 (3d ed.) .........................................................................................31

**RULES**

FED.R.CIV.P. 12(i) ...............................................................31, 32

**REGULATIONS**

22 *Cal. Code Reg.* § 72201 ...............................................................23

22 *Cal. Code Reg.* § 87101(u)(1)........................................................23

42 CFR § 483.80.......................................................................14, 21

42 CFR part 84.............................................................................24

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs bring claims against Defendant Downey Community Care, LLC dba Brookfield Healthcare Center ("Downey Community Care") in the context of provision of care to Asuncion Padilla from September 2020 to November 2020 at Brookfield Healthcare Center ("Brookfield" or the "Facility"), a skilled nursing facility, during the COVID-19 pandemic.   Though Plaintiffs have intentionally avoided specific allegations in their Complaint for Damages ("Complaint") that Downey Community Care undertook efforts to prevent the spread of COVID-19 within the Facility, Plaintiffs generally allege that Downey Community Care "failed to protect [Mr. Padilla] from known health and safety hazards" and that, as a result, Mr. Padilla contracted COVID-19, which caused his death.  (Compl., ¶¶ 15, 16, 17, 22, and 29) Further, Plaintiffs refer to a July 2020 California Department of Public Health ("CA DPH") citation ("July 2020 Citation") that was issued to the Facility for alleged "COVID-reporting violations", yet the July 2020 Citation in fact addresses Brookfield's infection control program and mitigation plan in place for preservation of Personal Protective Equipment ("PPE"), as well as Brookfield's utilization of certain PPE (gowns), all of which were implemented and in effect months before Mr. Padilla was admitted to the Facility in September 2020.[1] (*See* Declaration of Michael P. West, hereafter "West Decl.", 7/16/20 CA DPH "COVID-19 Focused Infection Control Survey" ("COVID-19 FICS"), Exhibit 1.)   Further, as discussed in detail below, other CA DPH surveys of which this Court can take judicial notice, unequivocally confirm that Brookfield had multiple countermeasures in place designed to prevent and curtail

---

[1] *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) (in deciding a motion to dismiss, a court can consider the pleadings and documents that are incorporated by reference or are properly the subject of judicial notice) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1  the spread of the virus to the Facility.  (West Decl., 3/30/20 CA DPH COVID-19 FICS,

2  Ex. 2; 6/18/20 CA DPH COVID-19 FICS, Ex. 3).

3  Based on these facts, Downey Community Care is immune from Plaintiffs'

4  claims under the federal Public Readiness and Emergency Preparedness Act, 42

5  U.S.C.A. §§ 247d-6d, 247d-6e ("PREP Act") because Downey Community Care is a

6  "covered person" engaged in "recommended activities" involved in the administration

7  and use of "covered countermeasures" during the COVID-19 global pandemic and

8  health emergency.[2]

9  This federal liability protection is critically important because the COVID-19

10  pandemic is an unprecedented and ongoing crisis that warrants constant adjustment by

11  our healthcare providers.  The World Health Organization (WHO), Centers for Disease

12  Control and Prevention (CDC), and other public health authorities have issued

13  continuously evolving recommendations, guidance, and advice based on the science of

14  the moment.  Nevertheless, despite aggressive efforts by governmental authorities and

15  the healthcare community, the pandemic continues to spread.  To date in the United

16  States, over 28 million people have contracted the virus, and over 500,000 people have

17  died as a result of the pandemic.  These numbers have disproportionately impacted

18  older Americans, with approximately 82% of COVID-19 deaths being individuals aged

19  65 or older.[3]

20  In addressing the needs of this population, dedicated staff from Brookfield are

21  on the front lines combating this deadly illness, caring for patients suffering from

22  sickness or advanced age, while also striving to shield them from the novel virus that

23  can be passed from person-to-person even without sign or symptom.  Despite efforts

24  by Downey Community Care, Mr. Padilla contracted COVID-19 and died weeks later;

25

26  [2] The PREP Act provides in "plain language" immunity "to 'anything related to' the administration of a covered countermeasure." (West Decl. Ex. 4: Department of Health

27  and Human Services Advisory Opinion 21-01, page 3).

28  [3] *See* https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (as of March 9, 2021).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    as a result, Plaintiffs seek damages for Mr. Padilla's alleged injuries and death.  This

2    and other examples of how COVID-19 challenges our seniors in healthcare facilities

3    only reinforces the critical need for legal immunities so that individuals and entities

4    like Downey Community Care are not subject to lawsuits that hinder and discourage

5    their critical, ongoing work in the face of constantly evolving standards of care and

6    treatment.

7        The Office of the General Counsel, Secretary of the Department of Health and

8    Human Services ("HHS") issued opinion letters (the "OGC Letters") that

9    unequivocally confirm that: (1) healthcare providers (including senior living

10    communities) may be "covered persons" entitled to immunity under the PREP Act

11    due to their status as "program planners" and "qualified persons"; and (2) PREP Act

12    immunities extend to both the actions *and omissions* of covered persons, such that

13    immunity exists even where an alleged "failure to act" has occurred. (West Decl., Exs.

14    5, 6, and 7).[4]  Further, in a more recent OGC Letter, the implementing authority has

15    now unequivocally confirmed that "[t]he PREP Act is a 'Complete Preemption'

16    Statute."  (West Decl., Ex. 4).

17        This Court can and should decide now, as a matter of federal law, that Downey

18    Community Care is immune from liability as deciding immunity questions at the

19    earliest stage of litigation during a pending motion to dismiss is key. (*See Physicians*

20    *Com. For Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal. App. 4th 120,

21    129. "The court has repeatedly . . . stressed the importance of resolving immunity

22    questions at the ***earliest stage in litigation***." (*Orsonio v. Armond*, No. B174092, 2005

23    Cal. App. Unpub. LEXIS 6054, at \*24–25 (July 13, 2005) (emphasis added) (quoting

24    *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).)

25

26

27

28

---

[4] The OGC's advisory opinions have now formally been made part of the HHS's Declaration implementing the PREP Act. *See* West Decl., Ex. 8 (85 Fed. Reg. 79195).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    This is especially so where, in cases like this, "the PREP Act exists, in part, to

2    remove legal uncertainty and risk." (West Decl., Ex. 7, Advisory Opinion 20-04, at 1).

3    Delaying this determination until a later stage of the proceedings will only force

4    healthcare providers and senior living communities to engage in expensive, disruptive,

5    and protracted discovery in the middle of an unprecedented pandemic, thus diverting

6    resources and depriving them of the very protections the federal immunities are

7    intended to confer.[5] Accordingly, Downey Community Care respectfully requests that

8    the Court determine that Downey Community Care is immune from liability under the

9    PREP Act and dismiss the Complaint.

10   **II.    FACTUAL BACKGROUND[6]**

11         The Complaint confirms that this case is predicated on Downey Community

12   Care's handling of COVID-19 within Brookfield:[7]

13         -    "[Mr. Padilla's] roommates came and went as patients were admitted and

14              discharged, without any evidence to Plaintiffs that the new roommates were

15              vetted and tested for COVID-19" (Compl., ¶ 15)

16         -    "On or about November 12, 2020, one of [Mr. Padilla's] roommates tested

17              positive for COVID-19…The next day, [Mr. Padilla] also tested positive for

18              COVID-19 (Compl., ¶ 16)

19         -    "…[Mr. Padilla] was admitted to Lakewood Regional Medical Center for

20              COVID-19 treatment…His death was caused by COVID-19 and related

21              complications." (Compl., ¶ 17)

22   _____

23   [5] Indeed, as discussed below, on August 14, 2020, the Office of the General Counsel,

24   Secretary of the HHS, issued an opinion letter (the "August 2020 OGC Letter") that
     unequivocally confirmed that senior living communities may be "covered persons,"

25   entitled to immunity under the PREP Act by virtue of their status as both "program

26   planners" and "qualified persons." (West Decl., Ex. 6).
     [6]Defendant assumes the facts in Plaintiffs' Complaint as true for the purpose of this

27   Motion only.
     [7] Brookfield is a skilled nursing facility licensed by the California Department of

28   Public Health.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

- "Defendants [failed] to protect [Mr. Padilla] from known health and safety hazards…Defendants conduct…harmed [Mr. Padilla]…" (Compl., ¶ 22)

- "Defendants' conduct directly caused [Mr. Padilla's] death." (Compl., ¶ 29)

Thus, no matter how Plaintiffs attempt to characterize the allegations, the inescapable conclusion is that the Complaint specifically sets forth an alleged direct causal link between COVID-19 and Mr. Padilla's alleged injuries and death.

By January 27, 2020, the Department of Health and Human Services ("HHS") declared a public health emergency because of COVID-19[8], and on March 11, 2020, the WHO declared a global pandemic.[9]  On March 4, 2020, Governor Gavin Newsom issued a Proclamation declaring a state of emergency in California concerning COVID-19.[10]  On March 13, 2020, the President of the United States declared a nationwide emergency pursuant to the Stafford Act.[11]  Further, on March 15, 2020, Governor Newsom issued Executive Order N-27-20, in part, because of the expected significant challenges that long-term facilities would face in staffing and capacity as a result of COVID-19. This Order reaffirmed the important role of facilities like Brookfield, directed collaboration between the state and covered persons, and specifically authorized the continued work of asymptomatic workers to address shortages in staffing.[12]

---

[8] *See* Determination that a Public Health Emergency Exists, https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.

[9] *See* WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-mediabriefing-on-covid-19---11-march-2020.

[10] *See* Proclamation of a State of Emergency (Mar. 4, 2020) https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/.

[11] *See* Letter from President Donald J. Trump on Emergency Determination Under the Stafford Act, https://www.whitehouse.gov/briefings-statements/letter-president-donald-j-trump-emergencydetermination-stafford-act/

[12] *See* Executive Order N-27-20 dated March 15, 2020: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.15.2020-COVID-19-Facilities.pdf

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    Although the allegations in Plaintiffs' Complaint strategically avoid specific
2    references to Brookfield's infection control program or use of PPE, the July 2020
3    Citation to which the Complaint refers confirms that Brookfield did have in place an
4    infection prevention and control program well before Mr. Padilla's admission, but was
5    simply cited based on an alleged observation of staff *sharing* a disposable PPE gown.
6    Sharing is obviously completely different than "non-use".  Further, the investigator
7    noted that the staff who were caring for the residents were doing so in the "yellow
8    (persons under investigation) zone and red (Coronavirus Disease 2019 [COVID 19]
9    highly contagious viral infection)" zone, thus clearly confirming an isolation protocol
10   in place for residents designed to mitigate the virus.  (West Decl., Ex. 1).

11       The investigator for the July 2020 inspection specifically wrote observing that
12   the staff member donned a disposable PPE gown, but not dispose of it since it was
13   being shared by staff when treating the resident in the designated room.   Further, the
14   investigator quoted an interview with the assisted Director of Nursing in which it was
15   stated, "[T]he practice of sharing disposable gowns reused by staff was part of [the
16   facility's] Mitigation Plan for preservation of PPEs."  The surveyor also cited to the
17   following source for a contingency strategy to be employed during the pandemic as
18   follows: "According to Center for Disease Control and Prevention (a national public
19   health institute) Coronavirus Disease 2019, updated July 16, 2020, the Contingency
20   Capacity Strategies indicated to shift gown use towards cloth isolation gowns…The
21   consideration can be made to extend the use of isolation gowns (disposable or cloth)
22   such that the same gown is worn by the same healthcare practitioner when interacting
23   with more than one patient known to be infected with the same infectious disease when
24   these patients housed in the same location (i.e. COVI-19 patients residing in an
25   isolation cohort)…"  (West Decl., Ex. 1).  Thus, clearly there was a decision making
26   process in play at the Facility addressing rapidly changing guidelines for handling PPE
27   in the storm of a pandemic while dealing with a shortage of supplies.

28

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

The Complaint conveniently also fails to direct attention to the March 30, 2020 CA PFH COVID-19 FICS and the 6/18/20 CA DPH COVID-19 FICS, which again confirm that the Facility had in place countermeasures designed to prevent the infiltration and spread of COVID-19 within Brookfield.   The March 2020 survey found: "The facility was found to be in compliance with 42 CFR § 483.80.   No deficiencies were noted for the [COVID-19 FICS]."   (West Decl., 3/30/20 CA DPH COVID-19 FICS, Ex. 2).   Similarly, the June 2020 survey found: "The facility was found to be in compliance with 42 CFR § 483.80 infection control regulations and has implemented the CMS and … (CDC) recommended practices to prepare for COVID-19."   (West Decl., 6/18/20 CA DPH COVID-19 FICS, Ex. 3).[13]

Accordingly, it is clear that Plaintiffs' state law claims all arise out of certain activities involving the exposure, diagnosis, and treatment of COVID-19, and the distribution, administration, or use of countermeasures to prevent the spread of COVID-19 within the facility.   Based on the above and as fully set forth below, Plaintiffs' claims fit squarely within the scope of immunity of the PREP Act.[14]   As such, Plaintiffs' Complaint must be dismissed.

---

[13] When deciding a motion to dismiss under Rule 12(b)(6), a court may consider "matters of public record and facts susceptible to judicial notice." *Daniels-Hall v. National Educ. Ass'n*, 629 F.2d 992, 998 (9th Cir. 2010) (taking notice of information made publicly available by government entities); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking notice of information on FDA website).
[14] It is black letter law that a federal or state statute may be invoked in a complaint, even if it is not mentioned by name.   *See JKC3H8 v. Colton*, 221 Cal. App. 4th 468, 478 (Cal. App. 2013). To allow a plaintiff to avoid the PREP Act through artful pleading "would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." *Id.*

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

III.   **ARGUMENT AND AUTHORITIES**

   A.   **LEGAL STANDARD FOR MOTION TO DISMISS**

   The Complaint should be dismissed under FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief may be granted, and alternatively may be dismissed under FED.R.CIV.P. 12 (b)(1) for lack of subject matter jurisdiction.

### *i.   Rule 12(b)(6) – Failure to State a Claim*

   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." (*Id*.)  Legal conclusions and mixed questions of law and fact do not receive the presumption of truth even at the pleading stage. (*See id.*; *Ni v. Royal Bus. Bank of Los Angeles*, 607 F. App'x 720 (9th Cir. 2015).)

   Questions of statutory interpretation "are questions of law ripe for resolution at the pleadings stage." (*Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009).)  Further, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." (*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).)  This includes where there is a challenge on qualified immunity grounds. (*See, e.g., Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003).)  Dismissal under this standard is also appropriate where there is a failure to exhaust administrative remedies, s*ee, e.g., Moore v. Avery*, 125 F. App'x 763, 764 (9th Cir. 2005), and if the Complaint does not meet heightened pleading requirements imposed by statute. (*See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-28 (2007).)

   Finally, when deciding a motion to dismiss under Rule 12(b)(6), a court may consider "matters of public record and facts susceptible to judicial notice." (*Daniels-Hall v. National Educ. Ass'n*, 629 F.2d 992, 998 (9th Cir. 2010) (taking notice of

16

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1  information made publicly available by government entities); *In re Amgen Inc. Sec.*

2  *Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking notice of information on

3  FDA website).)

4               ii.      ***Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction***

5         A motion to dismiss under Rule 12(b)(1) can raise lack of subject matter

6  jurisdiction through either a facial or factual attack. "In a facial attack, the challenger

7  asserts that the allegations contained in a complaint are insufficient on their face to

8  invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the

9  truth of the allegations that, by themselves, would otherwise invoke federal

10 jurisdiction." (*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).)

11 When considering a factual attack, "a court may look beyond the complaint to matters

12 of public record without having to convert the motion into one for summary judgment.

13 It also need not presume the truthfulness of the plaintiff's allegations." (*White v. Lee*,

14 227 F.3d 1214, 1242 (9th Cir. 2000).) The court may also consider "affidavits or other

15 evidence properly before the court." (*Meyer*, 373 F.3d at 1039.) In this case, a factual

16 attack is not essential; however, Defendant can submit any additional facts necessary

17 to resolve the question of immunity. "Plaintiffs' state law claims . . . are preempted by

18 the PREP Act and . . . the complaint must be dismissed for lack of subject matter

19 jurisdiction." (*Parker v. St. Lawrence County Pub. Health Dept.*, 954 N.Y.S.2d 259,

20 263 (NY App. Div. 2012).)  Importantly, the Court must resolve the immunity question

21 "at the earliest stage of litigation to avoid the expenses and delays of unnecessary

22 trials." (*Saucier n. Katz*, (2001) 533 U.S. 194, 200-201).)

23     **B.     DOWNEY COMMUNITY CARE IS IMMUNE FROM SUIT**

24             **UNDER THE PREP ACT**

25         Downey Community Care is immune under the PREP Act, as well the

26 implementing Declaration Under the PREP Act for Medical Countermeasures Against

27 COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), and various amendments -- including

28 the Fourth Amendment dated December 3, 2020 (collectively, "the Declaration").

(West Decl., Ex. 9) The intent of the PREP Act was to remove liability concerns -- specifically for countermeasures *and* covered persons -- so that resources would remain available during an emergency; otherwise, facilities such as Brookfield would simply shut down rather than expose themselves to endless lawsuits.[15]

Here, the PREP Act applies to all of Plaintiffs' state law claims related to or regarding the treatment, diagnosis and use of devices/countermeasures to treat, prevent, or mitigate COVID-19 in Brookfield.[16] The Act has a broad reach in its intended scope of protection, and empowers the Secretary of HHS to issue a written declaration identifying the "covered persons" who shall be immune from suit and liability under Federal and State law with respect to ***all claims for loss***[17] caused by, arising out of, relating to, or resulting from the administration or use of a "covered countermeasure" during a health emergency. 42 U.S.C. § 247d–6d(a)(1)&(b).

The Declaration provides liability immunity for "recommended activities," including the distribution, administration, and use of covered countermeasures against COVID 19. (*See* 85 Fed. Reg. 15198-15201.) The Declaration was amended on April 10, 2020 to reflect newly enacted legislation and the addition of "respiratory protective device[s] approved by NIOSH" to the list of "covered countermeasures." (*See* 85 Fed. Reg. 21012-02.) A June 8, 2020 Amendment then retroactively included as "covered

---

[15] *See* P. Binzer, *The PREP Act: Liability Protection for Medical Countermeasure Development, Distribution, and Administration, Biosecurity and Bioterrorism: Biodefense Strategy, Practice, and Science*, Vol. 6, No 4, 2008.

[16] The Act states that "[a] covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss ***caused by, arising out of, relating to, or resulting from*** the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(b)(1) (emphasis added).

[17] "Loss" is broadly defined as "any type of loss," including death, physical injury, mental injury, emotional injury, fear, property loss and damage, and business interruption loss. *Id*. § 247d-6d(a)(2)(A). Moreover, the immunity applies to any claim "that has a causal relationship with the administration to or use by an individual of a covered countermeasure." *Id*. § 247d-6d(a)(2)(B).

18

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

countermeasures" additional products that "limit the harm such a pandemic or epidemic might otherwise cause." (85 Fed. Reg. 35101.)  The Office of the General Counsel of HHS also issued an Advisory Opinion on April 17, 2020.  (*See* Advisory Opinion on the PREP Act and the March 10, 2020 Declaration Under the Act April 17, 2020, as Modified May 19, 2020 (Ex. 5).) The Declaration was amended again on December 3, 2020 which, *inter alia*, incorporates the Advisory Letters into the Declaration itself. (West Decl., Ex. 8, p. 3).

Most recently, the Office of the General Counsel of HHS ("OGC") issued an Advisory Opinion on January 8, 2021, applying the revised Declaration and addressing circumstances like the present where a plaintiff has attempted to plead around the PREP Act immunities.  (West Decl., Ex. 4).  The OGC has now stated unequivocally that "[t]he PREP Act is a 'Complete Preemption' Statute."  (*Id.* at 2.)  Further, the OGC has again confirmed that the PREP Act extends immunity to "anything 'related to' the administration of a covered countermeasures," including partial "non-use."  (*Id.* at 3.) The PREP Act is therefore only inapplicable where a covered person has failed to use *any* covered countermeasures, which is not the facts of this case.  (*Id.* at 2-3.)[18]

In addition to authority from HHS, the U.S. Department of Justice ("DOJ") filed a Statement of Interest ("SOI") of the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) at Dkt. No 35, which constitutes the official position of the United States' interest in the enforcement of the PREP Act.  The SOI set forth the position that federal jurisdiction is proper since the PREP Act's exclusive federal cause of action creates federal question jurisdiction, concluding that PREP Act immunity for all federal and state law claims and a sole exception to immunity claims process makes the PREP Act a complete preemption statute. *Id.* at 3, 7–8.  Significantly, the SOI provides that it is the nature of

---

[18] Even in this circumstance, however, immunity may still apply where the complete non-use was "the outcome of some form of decision-making process." (West Decl., Ex. 4, at p. 3).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    a complaint that determines complete preemption, not the stated claims. *Id.* at 6.  The

2    DOJ's SOI commenting on the scope of a federal court's jurisdiction is of

3    "considerable interest" to the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677,

4    701 (2004); *see also Garb v. Republic of Poland*, 440 F.3d 579, 584 (2d Cir. 2006).

5    In a case strikingly on point, *Garcia v. Welltower OpCo Grp. LLC*, 2021 WL

6    492581 (C.D. Cal. Feb. 10, 2021), the Court held that "[t]he acts and omissions alleged

7    by Plaintiffs appear almost verbatim in the January 8, 2021 Advisory Opinion" and that

8    accordingly, the PREP Act applied to the plaintiffs' claims. *Id.* at 14. This Court

9    concluded that "because the OGC stated that the PREP Act is a complete preemption

10   statute . . . an adequate basis for federal question jurisdiction exists." *Id.*  The sole

11   exception to PREP Act immunity is an exclusive Federal cause of action based on

12   willful misconduct in the D.D.C. *Id.* at 6. The *Garcia* court denied the plaintiff's motion

13   to remand, maintained federal jurisdiction and dismissed the plaintiff's claims

14   altogether. *Id.* The *Garcia* court found the PREP Act provides absolute immunity from

15   suit arising from alleged COVID-19 injuries due to the alleged negligent administration

16   and use of COVID-19 countermeasures. *Id.* at 18; *contra Hatcher v. HCP Prairie

17   Village KS OPCO LLC*, 20-cv-02374-SAC-JPO, at 3, 7–8, 16 (D. Kan. Jan. 27, 2021)

18   (seeing PREP Act as only a defense against suit and liability rather than as a

19   jurisdictional defense).

20   Together, these authorities provide immunity to an individual or entity under the

21   PREP Act if (1) they are a "covered person," (2) they are administering or using a

22   "covered countermeasure," (3) the claim against which immunity is asserted "arises

23   out of, relates to, or results from" the administration or use of the subject

24   countermeasure, (4) the administration or use occurs during "effective period", and (5)

25   the "covered countermeasure" was obtained through a specified "means of

26   distribution."  (PREP Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e; Declaration, *supra*.)

27   Here, Downey Community Care and its activities meet all these elements.

28

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

1

### 1.  Downey Community Care Is A "Covered Person" Under the PREP Act.

2

3      Plaintiffs' own allegations and documents referenced in the Complaint establish

4  that Downey Community Care is a "covered person," as defined by 42 U.S.C.A. §

5  247d-6d(i)(2)(B).  As more fully explained below, Downey Community Care satisfies

6  the definitions of both a "program planner" and a "qualified person."

### i.   Downey Community Care is a "Program Planner" under the PREP Act

7

8

9      The Act defines a "program planner" as a person or entity who:

10     [S]upervised or administered a program with respect to the administration,

11     dispensing, distribution, provision, or use of a security countermeasure or a

12     qualified pandemic or epidemic product, including a person who has established

13     requirements, provided policy guidance, or supplied technical or scientific

14     advice or assistance or provides a facility to administer or use a covered

15     countermeasure in accordance with [the Secretary's declaration].

16  (42 U.S.C.A. § 247d-6d(i)(6).)  Importantly, a "private sector employer or community

17  group or other 'person' can be a program planner when it carries out the described

18  activities." (85 Fed. Reg. at 15202.)  In addition to licensed healthcare providers, HHS

19  has already concluded that a senior living community is a "program planner" to the

20  extent it performs the above functions.  (West Decl., Ex. 6).

21     In the context of a skilled nursing facility like Brookfield, the administration and

22  distribution of covered countermeasures includes an infection control program against

23  COVID-19.  In addition, Brookfield  necessarily provides a facility to administer or

24  use such covered countermeasures.[19]  As alleged in the Complaint and the documents

25  it incorporates by reference, Brookfield supervised and administered an infection

26  control program using covered countermeasures, which included, *inter alia,* use of

27

28  _____

[19] As discussed *supra*, it is undisputed that Brookfield served as a facility at which PPE, symptom screening, and COVID-19 testing, *inter alia*, were administered or used.

21

PPE, screening/testing, and isolation procedures. (Compl., ¶ 16; (West Decl., Exs. 1-3).[20]

Importantly, and as confirmed via the January 8, 2021 Advisory Opinion, this provision also protects omissions by covered persons, including those which may be caused by a decision-making process. (*See* West Decl., Ex. 4, at pp. 2-3; Ex. 5 at p. 7 (noting that certain "acts or *omissions*" remain immune from suit) (emphasis added).) The Fourth Amendment to the Declaration confirms this:

> Where there are limited Covered Countermeasures, **not** administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d . . . . [such as] when [t]he person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. **Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections."**

(West Decl., Ex. 8, at p. 8) (emphasis added).  For all these reasons, "administration" may include decisions and actions, including reasonable choices, involving how covered countermeasures are used, allocated, or dispensed.  In this case, there is no doubt that decisions and reasonable choices were being utilized at the Facility as evidenced by the statements of staff regarding the reuse of PPE in response to the July 2020 CA DPH COVID-19 FICS.  (West Decl., Ex. 1).

Such non-physical "administrations" certainly apply here, where Plaintiffs allege Mr. Padilla was injured as a result of decisions made by facility staff resulting in alleged omissions or inaction that directly relate to covered countermeasures at

---

[20] The March 2020 and June 2020 CA DPH COVID-19 FICSs findings that Brookfield was in compliance with 42 CFR § 483.80 clearly establishes that all measures required by this statutory authority were in place within the Facility.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

Brookfield. (*See* Compl., ¶ 15, 16, 18). In essence, and as further discussed below, Plaintiffs allege that, but for Downey Community Care's decisions and administration of the infection control program, Mr. Padilla would not have contracted COVID-19. Accordingly, Plaintiffs purported injuries "arise out of and relate to" Downey Community Care's administration of covered countermeasures thereby triggering PREP Act immunity.

### ii.     *Downey Community Care is a "Qualified Person" under the PREP Act*

Under the PREP Act, a "qualified person who prescribed, administered, or dispensed" the countermeasure at issue is considered a "covered person." The term "qualified person" includes: (A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons so identified in a declaration by the Secretary.   (42 U.S.C.A. § 247d-6d(i)(8).)[21]   As a licensed healthcare provider, Downey Community Care is a "covered person".

Here, Downey Community Care is subject to the licensing requirements of state of the California Department of Public Health, which licenses and governs skilled nursing facilities/long term care facilities. (22 *Cal. Code Reg.* § 72201)  As such, Downey Community Care was required to implement at Brookfield universal precautions to prevent infections. (22 *Cal. Code Reg.* § 87101(u)(1).)  Further, the staff at Brookfield were among the class of workers directed to continue to work and to take precautions against the spread of COVID-19. (Executive Order N-27-20 pp. 1-2 (Ex. 10).  Therefore, Downey Community Care and its employees are "qualified persons" for purposes of PREP Act immunity.

---

[21] "[A]n official, agent or employee of a person or entity" that meets the above requirement is included in the definition of a "covered person." 42 U.S.C.A. § 247d-6d(i)(2)(B)(v).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

2.      **Plaintiffs' Allegations Involve "Covered Countermeasures"**

Plaintiffs' allegations and the March 2020, June 2020, and July 2020 CA DPH COVID-19 FICSs referenced in the Complaint also establish that Downey Community Care was engaged in the administration of "covered countermeasures." (West Decl., Ex. 1, 2, and 3). The PREP Act defines a "covered countermeasure" to include, *inter alia*, "qualified pandemic or epidemic products," as well as "drugs, biological products or devices authorized for investigational or emergency use," or "a respiratory protective device." (*See* 42 U.S.C.A. § 247d-6d(i)(1),(8); *see also* Ex. 10.)[22]  Here, the Complaint and the March 2020, June 2020, and July 2020 CA DPH COVID-19 FICSs concede that Downey Community Care implemented an infection control program that included, among other elements, specific covered countermeasures, such as screening/testing, isolation, and the use of PPE. (Compl., ¶¶ 15, 16, 18; West Decl., Ex. 1, 2, and 3).

Additionally, the Declaration defines "covered countermeasure" as "any antiviral, any other drug, any biologic, any diagnostic, any other device . . . used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product . . . ." provided such countermeasure fits into at least one of the categories set forth under the PREP Act: "qualified pandemic or epidemic products"; "drugs," "biological products," and "devices" authorized for emergency use under the FD&C Act; or "respiratory protective devices." (42 U.S.C.A. § 247d-6d(i)(1); 85 Fed. Reg. at 15202; Ex. 9.[23])

---

[22] On March 18, 2020, the Families First Coronavirus Response Act (the "FFCRA") added "respiratory protective device[s]" to the list of "covered countermeasures." The Secretary of HHS later amended the Declaration to include "any respiratory protective device." 85 Fed. Reg. 21014 Sec. VI (Apr. 15, 2020). The Secretary determined "that use of any respiratory protective devise approved by NIOSH under 42 CFR part 84, or any successor regulations, is a priority for use during the public health emergency …." *Id.* at 21013.

[23] Moreover, the PREP Act establishes "a rebuttable presumption that any administration or use, during the effective period of the emergency declaration by the

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

The April 2020 OGC Letter explains that for immunity to attach, the "drug," "biological product," or "device": (1) must be used for COVID-19; and (2) must be (a) approved, licensed, or cleared by FDA, (b) authorized under an EUA [Emergency Use Authorization], (c) described in an EUI [Emergency Use Instruction], or (d) used under either an Investigational New Drug (IND) application or an Investigational Device Exemption (IDE).  (*See* Ex. 5 at p. 4.) The April 2020 OGC Letter also recognizes that "[t]he number of products used for COVID-19 that are approved, licensed, or cleared are too numerous to list."[24] Here, Plaintiffs' claims arise out of several categories of covered countermeasures implemented by Brookfield.

The Complaint, by reference to the July 2020 Citation, clearly shows that Brookfield used PPE, specifically gowns.  (West Decl., Ex. 1).  PPE is identified as a covered countermeasure through March 2020 federal legislation. (*See* Pub. Law. No. 115-127, Sec. 6005.)  Additionally, the FDA has included numerous categories of PPE in their Emergency Use Authorizations related to COVID-19.[25]  Further, the PREP Act permits the Secretary to grant immunity for "covered countermeasures" that are obtained through a particular means of distribution, including those related to "public

---

Secretary …, of a covered countermeasure shall have been for the category or categories of diseases, health conditions, or threats to health with respect to which such declaration was issued." 42 U.S.C.A. § 247d-6d(a)(1)(6).  Here, there is no dispute that Plaintiffs' care was rendered during the effective period of the Secretary's Declaration. *See* Declaration (March 17, 2020); Compl., ¶¶ 14, 15, 16, 17.

[24] The Advisory Opinion cites to lists of medical devices and therapeutics that are covered by EUAs. *See* U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download ; U.S. Food & Drug Administration, FDA Combating COVID-19 With Therapeutics (May 4, 2020) https://www.fda.gov/media/136832/download. *See also* U.S. Food & Drug Administration, Emergency Use Authorization (last visited May 7, 2020), https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#covid19euas.

[25] *See* U.S. Food & Drug Administration, FDA Combating COVID-19 With Medical Devices (May 4, 2020), https://www.fda.gov/media/136702/download.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1   health and medical response of the Authority Having Jurisdiction to . . . distribute, or

2   dispense the Covered Countermeasures . . . ." (42 U.S.C.A. § 247d-6d(b)(2)(E).)  Here,

3   Downey Community Care is subject to the licensing laws and regulations of California

4   Department of Public Health concerning skilled nursing facilities, which directed

5   facilities like Brookfield to prepare for COVID-19 (*See* All Facilities Letter 20-10 (Ex.

6   11).)   Downey Community Care therefore qualifies as a "covered person"

7   administering or using a "covered countermeasure."[26]

8        The Complaint also confirms Brookfield used diagnostic devices (testing).

9   (Compl., ¶ 16).  Again, the Declaration identifies "any . . . *diagnostic*, any other device,

10  or any vaccine, used to treat, *diagnose*, cure, prevent, or mitigate COVID-19 . . . "

11  provided such countermeasure fits into at least one of the categories set forth under the

12  PREP Act. (42 U.S.C.A. § 247d-6d(i)(1); 85 Fed. Reg. at 15202 (emphasis added).)

13  To date, a very large number of diagnostic tests for use in detecting or preventing the

14  spread of COVID-19 have been approved, licensed, or cleared by the FDA, or subject

15  to an EUA.  The use (or allegedly negligent use) of diagnostic testing constitutes a

16  covered countermeasure and, in this matter, it is expressly alleged that such covered

17  countermeasure was administered to Mr. Padilla and other patients of Brookfield.

18  (Compl., ¶ 16)

19        Further, the allegations within the Complaint concede that Downey Community

20  Care was administering infection control protocols at Brookfield, including limiting

21  visitation, isolating COVID-19-positive patients, and using available PPE. (Compl., ¶¶

22  15, 16, 18; West Decl., Ex. 1).  These allegations directly implicate California skilled

23  nursing facility regulations and, in turn, trigger immunity under the PREP Act.

24

25

26  _____

27  [26] Plaintiffs have therefore not pled an "*in toto*" failure to use covered countermeasures
    as would *possibly* be sufficient to avoid triggering the PREP Act. *See* West Decl., Ex.
28  4 at 2-3.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

### 3.     Downey Community Care engaged in "Recommended Activities"

Downey Community Care was involved in "recommended activities," defined as the manufacture, testing, development, distribution, *administration and use* of one or more "covered countermeasures." (*See* 85 Fed. Reg. at 15201.)  This includes any activity that is part of an authorized emergency response at any level of government. (*See* West Decl., Ex. 5 at p. 2.)  These activities can be authorized through guidance, requests for assistance, agreements, or other arrangements, and are covered under the PREP Act even if a state or local authority has not declared a state of emergency.  (*See id.*)

Here, the covered countermeasures were administered or used within the effective period of the Declaration, and for the categories of diseases, health conditions, or threats to health contemplated by the Declaration. (*See* 42 U.S.C.A. § 247d-6d(a)(3); Compl., at ¶¶ 14-17.)  The Declaration defines "Administration of a Covered Countermeasure" as the physical provision of countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures. (*See* 85 Fed. Reg. at 15200.)  The definition of administration extends to the provision of a countermeasure to a recipient *and* also includes activities related to management and operation of programs and locations for providing countermeasures to recipients, such as administering a vaccine or handing drugs to a patient, and activities related to management of operations of programs and locations, such as decisions and actions involving security and queuing. (*See id.*)  Here, Plaintiffs allege or refer to documents that address the administration and use of testing, PPE, and other countermeasures to patients at Brookfield. (*See generally* Compl.).  Even "monitoring" a patient who has been exposed to COVID-19 may be considered a "recommended activity" as it is part of the management of an infection control protocol implemented in response to the virus.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1     This Court should reject the outmoded and incorrect "black and white' views" of

2   the prior district courts that required "physical administration" in order for the PREP

3   Act to apply.  *See Garcia*, at 14–15 (PREP Act covers alleged failures to use and/or

4   administer covered countermeasures, and that allegations of "momentary lapses" in

5   compliance with guidelines do not negate PREP Act application).  Further, AO 21-01

6   provides controlling authority that the Secretary has mandated courts "must" use to

7   resolve jurisdictional disputes involving "nursing homes and other healthcare facilities,

8   where patients or their estates allege that patients contracted COVID-19 because the

9   facility, among other things, failed to provide its staff with personal protective

10   equipment ("PPE"), failed to teach the staff how to properly use that equipment, or

11   failed to ensure that its staff used the PPE that it had been given." *See* AO 21-01.

12   **4.    Plaintiffs Failed to Exhaust Administrative Remedies.**

13     The PREP Act provides a limited exception to its immunity protections where

14   defendants have engaged in "acts or omissions" that meet the specified definition of

15   "willful misconduct."  (42 U.S.C. § 247d-6d(c)(1)& (d).)  In apparent recognition of

16   this limited exception, Plaintiffs include the conclusory allegation that Downey

17   Community Care acted willfully, specifically with "…oppression, fraud, or malice with

18   a conscious disregard for [Mr. Padilla's] rights, and with the intent to…injure…[him]".

19   (Compl., ¶ 26).   However, Plaintiffs' claim (i) can only be maintained after an

20   exhaustion of administrative remedies, (ii) must be brought in federal court in

21   Washington, D.C., and (iii) must be pled with particularity. *See* 42 U.S.C. § 247d-

22   6d(c)(3).  Alternatively, assuming Plaintiffs have sufficiently alleged willful

23   misconduct, and assuming any other part of the Complaint survives dismissal, this

24   matter should be dismissed without prejudice or stayed pending Plaintiffs' pursuit of

25   the willful misconduct claim administratively and in Washington, D.C.

26     Regarding administrative remedies, "a covered individual may not bring a civil

27   action under [the Act] against a covered person . . . unless such individual has exhausted

28   such remedies as are available under subsection (a)[.]"  (42 U.S.C. § 247d-6e(d)(1).)

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

These subsection (a) remedies include an "emergency fund" established when the Secretary issues a declaration under the PREP Act "for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries." (42 U.S.C.A. § 247d-6e(a).)   This remedy is "exclusive of any other civil action or proceeding for any claim or suit" to which it applies.  (§ 247d-6e(d)(4).)   Here, Plaintiffs did not first apply for these benefits, and their failure to do so warrants dismissal.[27]

### 5.    Plaintiffs' Exceptions to Immunity Must Be Filed Elsewhere.

To the extent Plaintiffs allege any exception to immunity, the PREP Act still preempts any conflicting state law claims.[28] Further, any suits alleging an exception can only be brought before a three-judge panel in the United States District Court for the District of Columbia.  (*See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-6d(e)(1),(5).) "Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons is an exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct by such Covered Person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act." (West Decl., Ex. 8. pp. 7-8). The Act therefore clearly contemplates an alternative avenue of relief for Plaintiffs and those similarly situated.  In short, this is not the forum for Plaintiffs' action.

---

[27] *See Rivas v. Coverall N. Am., Inc.*, No. SACV181007JGBKKX, 2019 WL 7166972, at *3 (C.D. Cal. Feb. 28, 2019).

[28] The Act provides that "no state … may establish, enforce or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that (A) is different from, or is in conflict with, any requirement applicable under section; and (B) related to the…use, …dispensing, or administration by qualified persons of the covered countermeasure." 42 U.S.C.A. § 247d-6d(b)(8).

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    **6.    Plaintiffs Fail to Comply with the Special Pleadings Standards.**

2    To the extent Plaintiffs attempt to plead willful misconduct, Plaintiffs'

3    allegations also fail to meet the PREP Act's heightened pleadings standards which

4    requires, among other things, that each element be pled with particularity, including

5    the specific acts or omissions constituting misconduct by each defendant, as well as

6    facts supporting proximate causation with respect to serious physical injury or death.

7    (*See* 42 U.S.C. § 247d-6d(e)(3).)  Rather, Plaintiffs' allegations contain merely labels,

8    conclusions, "formulaic recitation of the elements," and "naked assertions" that do not

9    meet the PREP Act's heightened pleading requirement. (*See Iqbal*, 556 U.S. at 678.)

10   Plaintiffs also fail to satisfy the special Verification, Certification, and attachment of

11   Medical Records requirements for willful misconduct suits. (*See* 42 U.S.C. § 247d-

12   6d(e)(4).)

13   **7.    Alternatively, the Complaint Should be Dismissed Without**

14   **Prejudice or Stayed.**

15   The PREP Act unquestionably provides exclusive jurisdiction in the federal

16   court of the District of Columbia for any "act or omission" by a Covered Person

17   constituting willful misconduct. (*See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-

18   6d(e)(1),(5).)  Even if Plaintiffs willful misconduct allegations are properly pled, they

19   must be pursued administratively and in the District of Columbia.  To the extent the

20   Court declines to dismiss with prejudice the remainder of Plaintiffs' claims, this Court

21   should dismiss such claims without prejudice or, alternatively, stay this matter pending

22   the resolution of Plaintiffs' willful misconduct claims.   Trial courts possess the

23   discretion to stay matters "pending resolution of independent proceedings which bear

24   upon the case." (*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir.

25   1979).[29])   Among the factors to be considered when exercising this discretion, the

26   _____

27   [29] The discretion applies "whether the separate proceedings are judicial, administrative,

28   or arbitral in character, and does not require that the issues in such proceedings are

necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 864.

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**

1    district court may consider the possible damage that may result from granting the stay,

2    the hardship that may be suffered by requiring a party go forward, and the orderly

3    course of justice, as measured in terms of simplifying issues in dispute. (*See CMAX,*

4    *Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).)

5         In this matter, no harm will result from staying the remainder of Plaintiffs'

6    claims (to the extent they survive dismissal), as Plaintiffs will be afforded the

7    opportunity to recover amounts against the PREP Act emergency fund and, potentially,

8    in an action before a D.C. federal court.  In contrast, Downey Community Care will

9    suffer significant prejudice by being forced to litigate inter-connected claims in two

10   separate forums simultaneously and in the midst of an on-going pandemic.  These

11   competing claims may also lead to conflicting results and waste of resources.

12        **C.     THIS COURT LACKS SUBJECT MATTER JURISDICTION**

13        The Complaint also should be dismissed for lack of subject matter jurisdiction,

14   as the PREP Act's immunity provision preempts all of Plaintiffs' state law claims. To

15   the extent an exception is claimed for allegations of willful misconduct, those

16   exceptions *must* be referred to the United States District Court for the District of

17   Columbia, as explained *supra*.   (*See* 42 U.S.C.A. §§ 247d-6d(c)(4); § 247d-

18   6d(e)(1),(5).)

19        **D.     DOWNEY COMMUNITY CARE REQUESTS A HEARING**

20                 **UNDER F.R.C.P. 12(i)**

21        Fed.R.Civ.P. 12(i) permits a party bringing a motion under Rule 12(b)(1)-(7) to

22   request that the defenses be "heard and decided before trial unless the court orders a

23   deferral until trial." Among other factors to be balanced by the Court when deciding

24   whether to conduct a hearing, the Court should consider the right of the party to have

25   his defense decided promptly and the ability to avoid costly and protracted litigation.

26   (*See* WRIGHT & MILLER, 5C FED. PRAC. & PROC. CIV. § 1373, Notes 11-15 (3d ed.).)

27        Downey Community Care requests that this Motion be heard in an expedited

28   manner because (i) it implicates subject-matter jurisdiction, (ii) Plaintiffs have not

31

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE
CENTER'S MOTION TO DISMISS**

exhausted alternative administrative remedies, and (iii) because immunity applies under the PREP Act.  Further, the application of these immunity laws now will completely resolve Plaintiffs' claims thereby saving the parties and the Court significant time and resources.  (*See Dixon v. City of Long Beach*, 244 Fed.Appx. at 128 n. 1 (9th Cir. 2007).) Accordingly, to the extent that the Court declines to decide the Motion on the papers alone, Downey Community Care requests an evidentiary hearing to determine the applicability of the various immunities discussed above.

## IV.    CONCLUSION

Plaintiffs' claims are preempted by the PREP Act and are otherwise improper, and should therefore be dismissed. To the extent a clarification of facts is necessary, Downey Community Care requests a hearing pursuant to FED.R.CIV.P. 12(i). Downey Community Care also requests such other relief as the Court deems proper.

Respectfully submitted this 12th day of March, 2021.

Respectfully submitted,

**CLARK HILL LLP**

By:    /s/Michael P. West
Michael P. West
Ashley A. Escudero
*Attorneys for Defendant,*
*Downey Community Care, LLC dba*
*Brookfield Healthcare Center*

262291280.v1

**DOWNEY COMMUNITY CARE, LLC DBA BROOKFIELD HEALTHCARE CENTER'S MOTION TO DISMISS**